UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— X

VINEYARD CREEK LLC,

                    Plaintiff,

          - against -

CHATEAU DIANA, LLC,

                    Defendant.

——————————————————— X

FILED

FEB 2 5 2015

Case No. WP SDNY

**COMPLAINT**

# 15 CV    1403

JUDGE BRICCETTI

Plaintiff, VINEYARD CREEK LLC ("Vineyard" or "Plaintiff"), by and through its counsel

Harrington, Ocko & Monk, LLP, as and for its Complaint against Defendant CHATEAU DIANA

LLC ("CD" or "Defendant"), for trade dress infringement and unfair competition, states and alleges

as follows:

## PARTIES

1.      Plaintiff Vineyard is a limited liability company duly organized and existing under the

laws of the State of New York, with its principal place of business located at 670 White Plains Road,

Ste. 121, Scarsdale, NY 10583.

2.      Upon information and belief, Defendant CD is a limited liability company with its

principal place of business located at 6195 Dry Creek Road, Healdsburg, CA 95448.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action as the parties are

completely diverse, and the amount in controversy exceeds $150,000, exclusive of interest and costs.

4.      This Court has personal jurisdiction over Defendant CD, as upon information and

belief, Defendant CD has committed and continues to commit tortious acts, both within and outside

the State of New York, causing injury to Plaintiff Vineyard in the State of New York, and Defendant

CD has transacted business within the State of New York, or has contracts to supply goods or services in the State of New York, and regularly solicits or engages in a persistent course of conduct and business in the State of New York, and can expect or reasonably should have expected, its acts alleged herein to have consequences in the State of New York, and Defendant CD derives, or has derived, substantial revenue from interstate commerce, including interstate commerce with persons or entities located in the State of New York.

5.       Upon information and belief, Defendant CD uses the website www.chateaud.com, which is accessible to consumers and businesses worldwide, including consumers and businesses located in Westchester County, New York. Upon information and belief, this website is interactive, and allows customers and businesses (including those located in Westchester County), to order products directly from CD by means of this website, including its wine products.

6.       Upon information and belief, Defendant CD markets, sells and distributes products to and through retail stores like ShopRite, located in Westchester County, New York.

7.       Venue is appropriate in this Court in this County pursuant to 28 U.S.C. §1391(b)(2), as upon information and belief, certain of the acts alleged against Defendant CD took place or caused injury to Plaintiff in Westchester County, and Plaintiff's principal place of business is located in this County, and the situs of the intellectual property at issue is located in this County.

## FACTUAL BACKGROUND

8.       Plaintiff Vineyard is in the business of marketing, selling and distributing wine products through various retail establishments in the State of New York, including but not limited to, retail stores, like ShopRite, Walmart, Price Chopper, Walgreens, Duane Reade and CVS.

9.       Under New York law, "wine product" is defined as a beverage containing wine with added juice, flavoring, water, citric acid, sugar and carbon dioxide, not containing more than 6%

alcohol by volume.  Unlike wine, which can only be sold in properly licensed liquor stores, under New York law, "wine product" can be sold in grocery stores and retail stores, as long as the store has the proper beer and wine product license.

10.     The fact that under New York law, wine product may be sold in properly licensed grocery and retail stores, but wine may not, has created a distinct niche market for wine products in New York.

11.     Upon information and belief, the wine products niche market in New York State does not have a large number of producers.  Upon information and belief, there are approximately 9-10 producers of wine products which sell in New York State, and these producers market and sell about 30 different types of wine products.

12.     Upon information and belief, the limited number of wine products producers and actual wine products sold in this niche market means success by one producer or product, can have a significant impact on the other producers.

13.     Upon information and belief, Plaintiff Vineyard is recognized as one of the recent market leaders in the area of wine products in New York, due to its superior product, and its fresh and unique trade dress and labels.

14.     Upon information and belief, Plaintiff's family of wine products is one of the fastest growing wine product in New York State.

15.     Before Vineyard began marketing and selling its family of wine products in New York, Vineyard's owners engaged in a lengthy and deliberate process in coming up with the unique and distinctive trade dress and labels for use with Vineyard's family of wine products.  The process included a review of the trade dress and labels used by other brands of wine products in New York at the time.

16.     At the conclusion of this deliberative process, Vineyard's management and owners decided on a unique and inherently distinctive trade dress and labels for its family of wine products that look like no others used by any brands of wine products sold in New York at the time, including the trade dress and labels used by Defendant CD for its wine products.

17.     Since July 2010, Plaintiff Vineyard has been marketing and selling its family of wine products in New York State, in four varietals: (a) Merlot, (b) White Zinfandel, (c) Pinot Grigio, and (d) Sauvignon Blanc.

18.     Since this date, Plaintiff has been consistently marketing and selling its family of wine products in New York, using the same inherently distinctive trade dress and labels, created as a result of the extensive review process.

19.     Plaintiff Vineyard's inherently distinctive and non-functional trade dress for its family of wine products includes the following material features:

(a)     a magenta/crimson red horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the White Zinfandel wine product;

(b)     a kelly green horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Pinot Grigio wine product;

(c)     a horizontal blue band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene,

which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Sauvignon Blanc wine product;

(d)    a horizontal merlot/garnet red band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule for the Merlot wine product.

See Exhibit A attached hereto.

20.    Upon information and belief, between July 2010 and December 2014, no other wine product sold in the State of New York contained elements similar to the unique and inherently distinctive trade dress and labels used by Plaintiff for its family of wine products. In particular, before January 2015, no other wine products sold in New York contained a label with a colored band in the middle of the label, running horizontally, with a sketch of a pastural scene of a vineyard and farm.

21.    Upon information and belief, between July 2010 and January 2015, the overall image of Plaintiff's trade dress and labels used for its family of wine products was unique, and no other wine product producers used a trade dress and labels which presented a similar overall look and image.

22.    At present, Plaintiff Vineyard has sold upwards of 25,000 cases of its wine products, per year, to various grocery store chains and retail establishments in the State of New York, including but not limited to, ShopRite, Walmart, Price Chopper, Walgreens, Duane Reade and CVS. A case of wine product contains 12 bottles.

23.    Plaintiff's family of wine products is now sold in at least 1,000 stores throughout the State of New York.

24.     In only 4.5 years, Vineyard's marketing and sales of its family of wine products has resulted in total gross revenues of more than $3 million.

25.     The large sales successes, in a short period of time, is partially as a result of offering superior wine products, with a unique and distinctive trade dress and labels, and partially the result of marketing efforts by Plaintiff Vineyard and its staff.

26.     Since July 2010, Plaintiff Vineyard has expended significant time and resources advertising and marketing its family of wine products with the inherently distinctive trade dress, including but not limited to, attendance and exhibits at industry trade shows, meetings and presentations to distributors, and meetings with sales personnel.

27.     In particular, part of the presentation made by Plaintiff Vineyard to distributors includes an emphasis on the unique and inherently distinctive trade dress for Vineyard's family of wine products, which matches the fresh, new and superior product being sold.

28.     Upon information and belief, according to distributors, having a trade dress and labels with a new and unique look, plays a large part of successfully marketing and selling wine products in the New York market.

29.     Vineyard also markets and promotes its family of wine products through a website, www.vineyardcreekwines.com.

30.     In pursuing it marketing and promotional plan for its family of wine products, and the trade dress and labels, Plaintiff has expended in excess of $200,000, which includes flyers, wine racks, apparel, and recipe cards among other things.

31.     As a result of the significant promotional efforts and marketing expenditures of Plaintiff Vineyard regarding its family of wine products over the past 4.5 years, the trade dress and

labels for Plaintiff Vineyard's family of wine products have obtained secondary meaning in the marketplace, and associate the family of wine products with a single source, Plaintiff.

32.     Upon information and belief, Plaintiff's success with its superior wine products has taken market share and sales away from Defendant CD and its older, inferior wine products.

### Defendant CD Engages in Knowing and Willful Trade Dress Infringement and Unfair Competition

33.     Upon information and belief, Defendant CD is a limited liability company, incorporated in the State of California, with its principal place of business located at 6195 Dry Creek Road, Healdsburg, CA 95448.

34.     Upon information and belief, Defendant CD is in the business of owning and operating a winery, and marketing, distributing and selling wine throughout the United States, including the State of New York.

35.     Upon information and belief, Defendant CD also sells wine products in the State of New York.

36.     Upon information and belief, Defendant CD was (and is) the largest producer and seller of wine products in New York State, and has been selling wine products in new York for 20 years.

37.     Upon information and belief, the sales of wine products in New York by Defendant CD have been on the decline in the last few years.

38.     Upon information and belief, prior to December 2014, Defendant CD marketed and sold five California varietals of wine product in the State of New York, including a Merlot, White Zinfandel, Pinot Grigio, Chardonnay, and Cabernet Sauvignon.

39.     Upon information and belief, until December 2014, Defendant CD marketed and sold its five varietals of wine products, using trade dress and a label that were identical to one another, except the name of the varietal in the bottle. See Exhibit B.

40.     Until December 2014, the trade dress and labels used by Defendant CD for its wine products consisted of the following main features:  (a) the large word "Chateau Diana" in tarnished gold in the middle of the label, (b) placed on a parchment colored background, with (c) writing and framing on the label also in tarnished gold, (d) a small label with a picture of a winery and an open gate, and (e) plastic cork capsules, in tarnished gold. Id.

41.     Defendant CD also markets and sells Sangria and Sparkling Moscato, and has only begun doing so in the last 18 months.  The trade dress and label used by Defendant for its Sangria consists of a black background, with the depiction of a sliced lime, lemon and orange, in front of grapes and grape leaves, with an orange cork capsule.  The trade dress and label used by Defendant CD for its Sparkling Muscato consisted of a silver label, with blue framing, and a silver foil over the cork cage.

42.     The trade dress and labels CD uses for its Sangria and Sparkling Moscato products look nothing like the trade dress and labels it uses for its other wine products, and nothing like the trade dress and labels used by Plaintiff for its family of wine products.

43.     Upon information and belief, Defendant CD markets, distributes and sells its wine products in the same stores as Plaintiff, and often through the same distributors as Plaintiff; such stores include Shop-Rite, Walmart, Duane Reade and CVS, among others.  Upon information and belief, Defendant CD's wine products are placed right next to or near Plaintiff's family of wine products in many stores.

44.     Upon information and belief, because Defendant CD markets and sells its wine products through many of the same distributors, and in the same stores as Plaintiff, Defendant CD knows of the inherently distinctive trade dress and labels used by Plaintiff for its family of wine products.

45.     Upon information and belief, Defendant CD's wine products have received very bad consumer reviews and comments.  Upon information and belief, consumers have used words like "abomination", "dreadful" and "rancid" in describing Defendant CD's wine products.

46.     Upon information and belief, on February 5, 2014, Hoda Kotb was interviewed on the "Morning Joe" television show.  Upon information and belief, during that interview, Ms. Kotb was took a drink of one of Defendant CD's wine products, and immediately described wine product as "rancid", put down her glass, and informed the other participants on the show not to drink the product because something was "wrong" with it.

47.     Upon information and belief, prior to Ms. Kotb describing Defendant CD's wine product as "rancid", the label for Defendant CD's wine product was prominently displayed to a national television audience.

48.     Upon information and belief, sometime in November/December 2014, Defendant CD drastically changed the trade dress and labels for its five varietals of wine products, to trade dress and labels that copy, and are intentionally, confusingly similar to the trade dress and labels used by Plaintiff Vineyard for its family of wine products.

49.     Upon information and belief, Defendant CD now markets, distributes and sells its wine products using trade dress and labels that contain a half-inch wide colored band, placed in the middle of the label, in the colors magenta/crimson red, kelly green, blue and merlot/garnet red, along

with the word "California", set over the sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and different colored cork capsule. See Exhibit C.

50.     The prominent material features now used by Defendant CD on its trade dress and labels for its wine products are confusingly similar, if not identical, to the non-functional, inherently distinctive elements and material characteristics used by Plaintiff Vineyard on the trade dress and labels for its family of wine products for the past 4.5 years.

51.     The material features, the layout of those features on Defendant's wine product labels, and the overall image of the new trade dress and labels now used by Defendant CD for its family of wine products, copy and mirror the material features, the layout of those features on Plaintiff's wine product labels, and overall image of the trade dress and labels used for the past 4.5 years by Plaintiff for its family of wine products.

52.     Upon information and belief, Defendant CD did not change the trade dress and labels used for its Sangria or its Sparkling Moscato product, to coincide with the elements used by Defendant CD on its other wine products.

53.     Interestingly, Plaintiff does not market and sell a Sangria or a Sparkling Moscato product, as does Defendant CD.

54.     Upon information and belief, Defendant CD sells numerous other full strength wines (as distinct from wine products) under various brands, including but not limited to, Jawbreaker, Quinton Estates, 1221, 707 Estate Wines, Mindbender, Black Oak, Zombie Zin, Pleasure Party, She Razz, and Candy Babee. See Exhibit D.

55.     Upon information and belief, none of these numerous other wines sold by Defendant CD use trade dress or labels which contain elements or features that are confusingly similar to the trade dress used by Plaintiff Vineyard to market and sell its family of wine products. Id. None of

these wines sold by CD feature trade dress or an overall look that is even remotely like Plaintiff Vineyard's.

56.     Therefore, upon information and belief, based on its own significant experience in creating wine bottle designs, Defendant CD could have easily designed trade dress and labels for its wine products that did not mimic and copy those of Plaintiff's, if Defendant desired to do so.

57.     Upon information and belief, the reason Defendant CD recently changed the material elements it used in the trade dress and labels for its wine products, which trade dress and labels now copy and infringe upon the inherently distinct trade dress and labels used by Plaintiff Vineyard, is to confuse consumers into believing the Defendant CD's wine products actually emanate or are associated with Plaintiff Vineyard, and its superior family of wine products; Defendant CD is trying to pass off its wine products as those of Plaintiff.

58.     Upon information and belief, in copying the trade dress, labels and overall look used by Plaintiff on its family of wine products, Defendant CD is trying to disassociate itself and its wine products from the negative consumer reviews for those products, and fool and trick the consumer about the source of Defendant's wine products.

59.     Upon information and belief, the infringing trade dress and labels now used by Defendant for its wine products, has created, and will continue to create a false association in the minds of consumers between Defendant's inferior wine products, and Plaintiff's superior family of wine products, thereby damaging the goodwill and positive reputation Plaintiff Vineyard's family of wine products have obtained with consumers during the past 4.5 years.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Trade Dress Infringement Under the Lanham Act, 15 U.S.C. §1125(a))

60.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "59" of the Complaint, as if fully set forth herein.

61.     For the past 4.5 years, Plaintiff Vineyard has used inherently distinctive, non-functional trade dress and labels for its family of wine products.

62.     The inherently distinctive, non-functional trade dress and labels used by Plaintiff Vineyard for its family of wine products include the following elements:

(a)     a magenta/crimson red horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and colored, foil cork capsule, for the White Zinfandel wine product;

(b)     a kelly green horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and colored, foil cork capsule, for the Pinot Grigio wine product;

(c)     a horizontal blue band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and colored, foil cork capsule, for the Sauvignon Blanc wine product;

(d)     a horizontal merlot/garnet red band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a

pastural scene, which includes a farmhouse next to a tree and vineyard, and colored, foil cork capsule, for the Merlot wine product.

63.     Through Plaintiff Vineyard's successful marketing and sales efforts for its family of wine products, the inherently distinctive trade dress and labels used by Plaintiff for its family of wine products have obtained secondary meaning in the marketplace, and have become associated in the minds of clients, customers, distributors and consumers with a single source for the superior wine products, namely Plaintiff Vineyard.

64.     Upon information and belief, as described in detail above, as of November/December 2014, Defendant CD has begun improperly copying and infringing upon the material elements of the inherently distinctive trade dress and labels used by Plaintiff Vineyard for its family of wine products.

65.     Upon information and belief, Defendant CD's improper and infringing conduct is knowing and willful, as Defendant CD was, and is aware of Plaintiff's use of its inherently distinctive trade dress and labels to market and sell its family of wine products.

66.     Upon information and belief, Defendant CD has begun using infringing trade dress and labels for its wine products, in order to disassociate its wine products from their reputation as inferior products, and to improperly cause consumers to believe that Defendant's wine products emanate from and are associated with Plaintiff and its superior family of wine products.

67.     Upon information and belief, as a result of the improper and infringing conduct of Defendant CD, there is a likelihood of consumer confusion as between Plaintiff's superior family of wine products, and those marketed and sold by Defendant CD.

68.     Upon information and belief, Plaintiff Vineyard has been, and will continue to be damaged by Defendant CD's willful and infringing conduct, and the superior reputation of Plaintiff's wine products will be tarnished and diluted by the Defendant's improper, bad faith conduct.

69.     As a result of Defendant CD's improper conduct, Plaintiff Vineyard is entitled to money damages, multiple damages, and the recovery of its attorneys' fees and costs for this litigation based upon Defendant's bad faith intentional conduct, as well as the issuance of an injunction, precluding Defendant from using the confusing similar trade dress and labels for its wine products.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Unfair Competition Under the Lanham Act, 15 U.S.C. §1125)

70.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "69" of the Complaint, as if fully set forth herein.

71.     For the past 4.5 years, Plaintiff Vineyard has used an inherently distinctive, non-functional trade dress and labels for its family of wine products.

72.     The inherently distinctive, non-functional trade dress and labels used by Plaintiff Vineyard for its family of wine products includes the following elements:

(a)     a magenta/crimson red horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the White Zinfandel wine product;

(b)     a kelly green horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Pinot Grigio wine product;

(c)    a horizontal blue band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Sauvignon Blanc wine product;

(d)    a horizontal merlot/garnet red band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Merlot wine product.

73.    Through Plaintiff Vineyard's successful marketing and sales efforts for its family of wine products, the inherently distinctive trade dress and labels used by Plaintiff for its family of wine products has obtained secondary meaning in the marketplace, and has become associated in the minds of clients, customers, distributors and consumers with a single source for the wine products, namely Plaintiff Vineyard.

74.    Upon information and belief, as described in detail above, as of December 2014, Defendant CD has begun improperly copying and infringing upon the material elements of the inherently distinctive trade dress and labels used by Plaintiff Vineyard for its family of wine products, and now uses the confusingly similar trade dress and labels to market and sell Defendant CD's wine products in the State of New York.

75.    Upon information and belief, Defendant CD has begun using infringing trade dress and labels for its wine products, in order to disassociate its wine products from their reputation as inferior products, and to improperly cause consumers to believe that Defendant's inferior wine products emanate from and are associated with Plaintiff and its superior family of wine products

76.     Upon information and belief, Defendant CD's improper and infringing conduct is knowing and willful, as Defendant CD was, and is aware of Plaintiff's use of its inherently distinctive trade dress and labels to market and sell its family of wine products.

77.     Upon information and belief, as a result of the improper and infringing conduct of Defendant CD, there is a likelihood of confusion as between Plaintiff's superior family of wine products, and those inferior wine products marketed and sold by Defendant CD.

78.     Upon information and belief, Plaintiff Vineyard has been, and will continue to be damaged by Defendant CD's willful and infringing conduct, and the superior reputation of Plaintiff's wine products will be tarnished and diluted by the Defendant's conduct.

79.     As a result of Defendant CD's improper conduct, Plaintiff Vineyard is entitled to money damages, multiple damages, in addition to an award of attorneys' fees and costs for this litigation based upon Defendant's bad faith intentional conduct, as well as the issuance of an injunction, precluding Defendant from using the confusing similar trade dress and labels for its wine products.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Unfair Competition Under New York Common Law)

80.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "79" of the Complaint, as if fully set forth herein.

81.     Plaintiff Vineyard has established inherently unique, non-functional trade dress and labels for its family of wine products, which trade dress and labels have obtained secondary meaning in the marketplace through the extensive marketing, distribution and sales success of Plaintiff's wine products over the past 4.5 years.

82.     The inherently distinctive trade dress for Plaintiff Vineyard's family of wine products is as follows:

(a)     a magenta/crimson red horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the White Zinfandel wine product;

(b)     a kelly green horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Pinot Grigio wine product;

(c)     a horizontal blue band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Sauvignon Blanc wine product;

(d)     a horizontal merlot/garnet red band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Merlot wine product.

83.     Through Plaintiff Vineyard's use, marketing, distribution and sale of its family of wine products, using the inherently distinctive trade dress and labels, the trade dress and labels have obtained secondary meaning in the marketplace. Clients, consumers, distributors and customers now associate the trade dress and labels of Plaintiff's family of wine products with a single source of this family of wine products.

17

84.     Upon information and belief, as described in detail above, as of no later than December 2014, Defendant CD has knowingly and improperly copied and misappropriated the material elements of the inherently distinctive trade dress and labels used by Plaintiff Vineyard for its family of wine products, and now uses confusingly similar trade dress and labels to market and sell Defendant CD's inferior wine products, to the harm and detriment of Plaintiff Vineyard.

85.     Upon information and belief, Defendant CD's improper and infringing conduct is knowing and willful, and done in bad faith, as Defendant CD was and is aware of Plaintiff Vineyard's use of, and success with its inherently distinctive trade dress and labels for its family of wine products, and Defendant CD has intentionally copied and misappropriated the material elements of Plaintiff's distinctive trade dress and labels for Defendant's own use.

86.     Upon information and belief, as a result of the illegal and improper misappropriation and copying by Defendant CD of the material elements of Plaintiff Vineyard's inherently distinctive trade dress and labels, there is a likelihood of confusion by consumers, as between Plaintiff Vineyard and its family of wine products, and Defendant CD and those wine products now marketed and sold by Defendant CD.

87.     Plaintiff has been, and will continue to be damaged by Defendant CD's illegal infringing conduct, which constitutes improper misappropriation of the expenditures and labor of Plaintiff Vineyard, for the commercial advantage of Defendant CD.

88.     As a result of such conduct, Plaintiff Vineyard is entitled to money damages, multiple damages, in addition to an award of attorneys' fees and costs for this litigation, as well as the issuance of an injunction precluding Defendant CD from using trade dress and labels which are confusingly similar to the trade dress and labels used by Plaintiff Vineyard for its family of wine products.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Trade Dress Infringement Under New York Common Law)

89.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "88" of the Complaint, as if fully set forth herein.

90.     For the past 4.5 years, Plaintiff Vineyard has used an inherently distinctive, non-functional trade dress and labels for its family of wine products.

91.     The inherently distinctive, non-functional trade dress and labels used by Plaintiff Vineyard for its family of wine products includes the following elements:

(a)     a magenta/crimson red horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and colored, foil cork capsule, for the White Zinfandel wine product;

(b)     a kelly green horizontal band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Pinot Grigio wine product;

(c)     a horizontal blue band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Sauvignon Blanc wine product;

(d)     a horizontal merlot/garnet red band of approximately one-half inch in width, placed in the middle of the label, along with the word "California", set over a sketch of a

19

pastural scene, which includes a farmhouse next to a tree and vineyard, and a colored, foil cork capsule, for the Merlot wine product.

92.     Through Plaintiff Vineyard's successful marketing and sales efforts for its family of wine products, the inherently distinctive trade dress and labels used by Plaintiff for its family of wine products have obtained secondary meaning in the marketplace, and have become associated in the minds of clients, customers, distributors and consumers with a single source for the wine products, namely Plaintiff.

93.     Upon information and belief, as described in detail above, as of December 2014, Defendant CD has begun improperly copying and infringing upon the material elements of the inherently distinctive trade dress and labels of Plaintiff Vineyard's family of wine products, and now uses confusingly similar trade dress and labels to market and sell Defendant CD's wine products in the State of New York.

94.     Upon information and belief, Defendant CD's improper and infringing conduct is knowing and willful, as Defendant CD was, and is aware of Plaintiff's use of its inherently distinctive trade dress and labels to market and sell its family of wine products.

95.     Upon information and belief, as a result of the improper and infringing conduct of Defendant CD with respect to using elements of the trade dress and labels for its wine products which copy and infringe upon the inherently distinctive elements of the trade dress and labels used by Plaintiff Vineyard for its family of wine products, there is a likelihood of confusion as between Plaintiff's superior family of wine products, and those inferior wine products marketed and sold by Defendant CD.

96.     Plaintiff has been, and will continue to be damaged by Defendant CD's illegal infringing conduct, which constitutes improper misappropriation of the expenditures and labor of Plaintiff Vineyard, for the commercial advantage of Defendant CD.

97.     As a result of such conduct, Plaintiff Vineyard is entitled to money damages, multiple damages, in addition to attorneys' fees and costs for this litigation, as well as an injunction precluding Defendant CD from using trade dress and labels which are confusingly similar to the trade dress and labels used by Plaintiff Vineyard for its family of wine products.

**WHEREFORE**, Plaintiff Vineyard demands judgment against Defendant CD as follows:

A.      On the first cause of action against Defendant CD, an award of monetary damages in an amount not less than $1,000,000 (one million dollars), plus interest, as well as attorneys' fees and costs, and an injunction precluding Defendant CD from using trade dress and labels that are confusingly similar to and infringe upon the trade dress and labels used by Plaintiff for its family of wine products;

B.      On the second cause of action against Defendant CD, an award of monetary damages in an amount not less than $1,000,000 (one million dollars), plus interest, as well as attorneys' fees and costs, and an injunction precluding Defendant CD from using trade dress and labels that are confusingly similar to and infringe upon the trade dress and labels used by Plaintiff for its family of wine products;

C.      On the third cause of action against Defendant CD, an award of monetary damages in an amount not less than $1,000,000 (one million dollars), plus interest, as well as attorneys' fees and costs, and an injunction precluding Defendant CD from using trade dress and labels that are confusingly similar to and infringe upon the trade dress and labels used by Plaintiff for its family of wine products;

D.      On the fourth cause of action against Defendant CD, an award of monetary damages in an amount not less than $1,000,000 (one million dollars), plus interest, as well as attorneys' fees and costs, and an injunction precluding Defendant CD from using trade dress and labels that are confusingly similar to and infringe upon the trade dress and labels used by Plaintiff for its family of wine products,

E.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38, Plaintiff Vineyard hereby claims a jury trial on all issues triable to a jury in this action.

Dated:    White Plains, New York
           February 25, 2015

Respectfully submitted,

By: _____
    Kevin J. Harrington, Esq.
    John T. A. Rosenthal, Esq.
    HARRINGTON, OCKO & MONK LLP
    *Attorneys for Plaintiff*
    *VINEYARD CREEK LLC*
    81 Main Street, Suite 215
    White Plains, NY 10601
    Tel. (914) 686-4800
    Fax (914) 686-4824
    kharrington@homlegal.com
    jrosenthal@homlegal.com

TO:

CHATEAU DIANA LLC
6195 Dry Creek Road
Healdsburg, CA 95448